## DAVID B. HAWORTH

### v.

## ABIJAH TAYLOR.

108   275
22a   635

*Filed at Springfield June 18, 1883—Rehearing denied January Term, 1884.*

1. RECORDING LAW—*deed notice from time of filing for record.* The statute makes the filing of a deed for record the same as the recording of it, as respects notice to subsequent purchaser, etc.

2. But where a deed for land is left by the grantee with the recorder, and the fees for recording paid, with a direction not to record the same until ordered to do so, as shown by a memorandum on the entry book, and before orders to record the same another deed from the same grantor is filed and recorded, such first deed will not be held to have been filed for record, within the meaning of the statute, before the second deed, and the grantee in the latter will not be affected with constructive notice of the prior deed from the records of deeds.

3. NOTICE—*of title, by tenant's possession.* The possession of land by a tenant under a written lease, before the commencement of the term, is constructive notice of whatever title the landlord may have to the same at the time of a subsequent conveyance to another.

4. A husband leased land of his wife on August 22, 1865, to a tenant for five years, the term to commence on March 1, 1866, under which lease the tenant took possession in September or October, 1865. The wife, after a decree of divorce, in the exchange of lands conveyed the premises to the husband on November 13, 1865, and on December 26, 1865, she conveyed the same to one H., whose deed was first recorded: *Held,* that the possession of the tenant, at the date of the last deed from the wife, was notice to the grantee therein of the husband's title under his unrecorded deed from his former wife.

5. REDEMPTION—*when allowed in equity after statutory time has passed.* A debtor's quarter-section of land was sold on execution for $580, a sum less than its value, and a certificate of purchase given and duly recorded. It afterwards appeared that at the same time other real estate of the debtor was sold for $5, the yearly rental value of which was over $500, and a certificate thereof made out, but not recorded until more than five years after the sale, when a sheriff's deed was taken on it by an assignee. The return on the execution showed a satisfaction of the execution by the sale of the first named lands, which were described, there being no mention made in the return of the sale of the other tract: *Held,* that under the peculiar circumstances the judgment debtor had a right to a decree enabling him to redeem from such

sale the land sold for $5, of which sale the record failed to afford him notice in time to redeem under the statute.

6. PURCHASER—*of equitable interest, not protected.* A purchaser of a certificate of purchase of land sold at a judicial sale takes only an equitable interest, subject to all the equities of the former owner or the debtor, and occupies no better position than the plaintiff in the execution, of whom he takes the assignment.

7. CHANCERY JURISDICTION—*to set aside cloud on title held by defendant in possession.* A court of equity may well entertain jurisdiction of a bill by a party out of the possession of land against one in its possession to remove a cloud upon title, where it also seeks to redeem from a sale on execution for gross irregularities and fraudulent concealment of the sale.

8. CHANCERY—*rents and profits recoverable under general prayer.* Where a bill in chancery makes and presents a proper case for an account of the rents and profits of land against the defendant, such account may properly be taken under the general prayer for relief.

9. MORTGAGE—*by absolute deed does not deprive party of right to recover rents and profits.* A deed absolute on its face, given only to secure the payment of money, does not deprive the grantor of the right to recover for rents and profits of the land between the date of such deed and a reconveyance to him.

WRIT OF ERROR to the Circuit Court of Tazewell county; the Hon. JOHN BURNS, Judge, presiding.

This was a bill in chancery, brought by Abijah Taylor, against David B. Haworth, to have set aside a certain deed from Mary E. Taylor, the former wife of Taylor, to Haworth, and also a sheriff's sale and deed of land claimed as belonging to Taylor, or for leave to redeem from such sheriff's sale. The court below decreed in favor of the complainant, and the defendant, Haworth, appealed to this court.

The prominent facts appearing from the evidence are, that on September 27, 1872, Taylor commenced a suit in ejectment in the circuit court of Mason county against Haworth, to recover possession of the south half of the north-east quarter, and the north half of the south-east quarter of section 24, township 21, range 7, in Mason county. The cause was tried at the November term, 1872, resulting in a verdict

for the defendant. A new trial, for cause, was granted. The venue was afterwards changed to Tazewell county, where, at the May term, 1874, the cause was again tried by the court without a jury, the finding again being for the defendant. At the May term, 1875,*within a year, a new trial was awarded to Taylor under the statute. At the September term, 1875, Taylor filed the bill in this case. Haworth's claim of title in the ejectment suit having been under said deed and sheriff's sale, the bill also asked that Haworth be enjoined from further proceeding in the ejectment suit until after the final hearing.

It appears that on the 22d day of August, 1865, Mary E. Taylor, the wife of Abijah Taylor, was the owner of the lands in controversy; that they were then residing in Indianapolis, Indiana, and that on that day Taylor, the husband, leased said lands to one D. B. Johnson, by written lease, for a term of five years, beginning March 1, 1866, but Johnson went into possession in September or October, 1865, and thence continued in possession until in March, 1867, when Haworth took possession. On November 11, 1865, Mrs. Taylor obtained a divorce in Indianapolis from her husband, Abijah Taylor, and a decree for $7000 alimony. There were five children living, the custody of whom was decreed to Mrs. Taylor. On November 13, 1865, two days after the decree of divorce, Abijah Taylor conveyed by deed to Mrs. Taylor some property in Indianapolis, being the house in which they had resided, and some land in Champaign county, Illinois, and Mrs. Taylor conveyed to Abijah Taylor the lands in controversy in this case, the conveyances being to the respective grantees for life, with remainder to their five children, and on the same day of the conveyances Mrs. Taylor receipted on the record of the court in Indianapolis the decree for alimony in full. This deed from Mary E. Taylor to Abijah Taylor was filed for record in the recorder's office of Mason county, where the lands were situated, June 15, 1866, and

the recording fees paid, but the deed was not spread upon the record until long afterward, and after the making and recording of the deed following.   On December 26, 1866, Mrs. Taylor made a warranty deed to Haworth, for the consideration of $3000, of these same lands in controversy, which she had conveyed previously to Abijah Taylor.   Haworth resided in Indiana, and the sale to him was negotiated by the attorney for Mrs. Taylor in her divorce suit, which attorney drew the deed from Mrs. Taylor to Abijah Taylor, and was brother-in-law to Haworth.   On the 19th day of November, 1866, Mrs. Taylor recovered a judgment against Abijah Taylor for $526.58, and costs, in the Mason county circuit court, upon which an execution was issued January 18, 1867, directed to the sheriff of Mason county to execute.   On August 6, 1867, the sheriff returned the execution, with the following indorsements thereon:

"I hereby certify that the above described property, levied on January 26, 1867, has been sold by me this 20th day of March, 1867, in pursuance of law and due notice, for the sum of $580, amount in full of debt, interest and cost.   Property purchased by plaintiff.

JAS. L. HASTINGS, *Sheriff*."

"I hereby return the within execution and fee bill, satisfied in full by sale of property levied on, to-wit:   S.W. qr. of S.W. qr. Sec. 24, T. 21, R. 7, for $140.00;   S.E. qr. of S.W. qr. Sec. 24, T. 21, R. 7, for $150.00;   N.E. qr. of S.W. qr. Sec. 24, T. 21, R. 7, for $145.00;   S.E. qr. of N.W. qr. Sec. 24, T. 21, R. 7, for $145.00;   all property purchased by plaintiff, all cost paid by plaintiff.   Cost paid to clerk, and my fees retained August 6, 1867.

JAS. L. HASTINGS, *Sheriff*."

A certificate of purchase upon the sale was given to the plaintiff in execution, that the tracts of land above described were purchased by her under the execution for $580, on

March 20, 1867, which certificate was duly recorded. The above described tracts of land embrace none of the lands in controversy.

There was indorsed on the execution a statement of levy of the execution on January 26, 1867, on the above described and two other forty-acre tracts of land, and also the life interest of Abijah Taylor in the lands in controversy, and of a further levy on March 8, 1867, on the leasehold interest of Taylor in some five hundred and twenty acres of other lands. At the trial of the ejectment suit in Tazewell county, in May, 1874, the court permitted an amendment of the return on the execution by adding after the list of tracts described therein as sold, "also the life interest of Abijah Taylor in the following described tracts of land," describing the four fortys of the land in controversy, as sold for five dollars,—two for one dollar each, and the two others for one dollar and fifty cents each.

At the first trial in the ejectment suit in Mason county, there was produced in evidence by Haworth a certificate of purchase signed by the sheriff, bearing date March 20, 1867, stating that the lands in controversy were sold under the execution on that day to Mary E. Taylor for five dollars, and a sheriff's deed for the lands to Haworth, as assignee of this certificate of purchase, made on October 8, 1872. The certificate of purchase was then for the first time filed for record in the recorder's office of Mason county on that day.

In regard to this certificate of purchase the sheriff who sold the lands testified, that both the certificates of purchase were made out and dated at the same time, and that the attorney for Mrs. Taylor at the sale said he did not want the certificate of purchase of the lands in controversy unless he ordered it—he wanted to save expense; that afterward the attorney told witness he did not know as they would want the last mentioned certificate of purchase, and witness then filed it away with his old papers until he went out of office; that the next time he was spoken to about it was in 1870 or 1871,

when said attorney asked him if he could make out a certificate of purchase for the lands in controversy, as he had never received it; that witness said it was not necessary to make one out, as he had one which was his if he wanted it. The attorney said he had use for it, and witness sent to him the certificate by mail. This attorney testified in the case that he received the collection from that attorney of Mrs. Taylor in Indiana, before spoken of, and under whose directions he acted. The uncontradicted testimony of Abijah Taylor was that he left and went to New York in June, 1866, and returned in the early part of 1872; that he first heard that this land had been sold by the sheriff after his return; that he was not back in this State or Indiana between 1866 and 1872.

Mr. C. A. ROBERTS, and Mr. O. H. WRIGHT, for the plaintiff in error:

Bill to quiet title did not lie, as the defendant was in the actual possession. *Harding* v. *Jones,* 86 Ill. 313; *Oakley* v. *Hurlbut,* 100 id. 204.

But the bill is sought to be sustained on the ground of fraud. "To make a deed fraudulent and void, or voidable, all the parties thereto must participate in the fraud." *Prevo* v. *Waltes,* 4 Scam. 35; *Ewing* v. *Runkle,* 20 Ill. 448; *Myers* v. *Kinsey,* 26 id. 38; *Muxell* v. *Williamson,* 35 id. 529.

We understand the rule to be settled in this State, that in order to impeach a conveyance for fraud both vendor and vendee must be shown to have intended to commit the fraud before the deed can be avoided. *Hatch* v. *Jordan,* 74 Ill. 414; *Gridley* v. *Bingham,* 51 id. 153.

It is also a well settled rule that fraud can not be presumed, but must be proven. Story's Eq. Jur. sec. 190; *Hatch* v. *Jordan,* 74 Ill. 414.

The entry of the deed in this case being not within either the letter or spirit of the Recording law, was no notice to a subsequent purchaser. Story's Eq. Jur. sec. 404.

Evidence of notice of a prior unrecorded deed should leave no reasonable doubt of notice.    *McVey* v. *McQuality*, 97 Ill. 93.

When possession is taken and held without any claim of title, the continued possession after the acquisition of title is no notice to others of such title.    *Emmons* v. *Murray*, 16 N. H. 398; *Fair* v. *Stevenot*, 29 Cal. 486.

The statute requiring a sheriff to file a certificate of sale for record is directory, and a failure to do this does not affect the validity of the sale.    *Stewart* v. *Croes*, 5 Gilm. 442; *Jackson* v. *Young*, 5 Cow. 269.

Between the defendant in execution and a *bona fide* holder of the title, acquired through a sheriff's sale, all that it is necessary to show is a valid judgment, execution, levy, and deed; and all else, when these are shown, is between the parties to the execution and the officer making the sale. *Wheat* v. *Sexton*, 4 Whart. 503; *Landes* v. *Brant*, 10 How. 371; *Taylor* v. *Thompson*, 15 Pet. 399; *Remington* v. *Linthicum*, 14 id. 84; *Shepherd* v. *Rowe*, 14 Wend. 600; *Kinney* v. *Knoebel*, 47 Ill. 417.

Many of the most respectable authorities go so far as to say, that if no levy or return is made, or notice of sale given, it would not affect a *bona fide* purchaser.    *Draper* v. *Bryson*, 17 Mo. 70; *Brooks* v. *Rooney*, 11 Ga. 423; *Smith* v. *Hill*, 22 Barb. 655.    And see, *Wood* v. *Colvin*, 5 Hill, (N. Y.) 238; *Tullis* v. *Brawley*, 3 Minn. 277; *Fulsome* v. *Carl*, 5 id. 333.

Mr. E. A. WALLACE, and Mr. W. H. CAMPBELL, for the defendant in error:

The return to the execution shows a full satisfaction by the sale of one hundred and sixty acres of Taylor's land, and of a certificate of purchase duly issued therefor and recorded, but no mention is made of the land in controversy, and no certificate of purchase for it is taken out, and none filed for record.    On the contrary, the records of the county showed

full satisfaction of the judgment and a release of the present lands.

The tenant's possession was notice of Taylor's rights at the time of the making and delivery of the second deed, even though he had no title at the date of the lease.

Although inadequacy of consideration alone is not sufficient to set aside a judicial sale, it may well be considered with other irregularities and objections, and may turn the scale. *Dutcher et al.* v. *Leake et al.* 44 Ill. 400; *Dickerman* v. *Burgess,* 20 id. 266; *Thomas* v. *Hebenstreit,* 68 id. 118.

As to the effect, under the facts in this case, of the sheriff's sale and deed, see the cases last cited.

Taylor was, in law, in possession when he filed his bill. He was in possession, by his tenant, when Haworth got the same without consent, by collusion with Taylor's tenant. *Hardin* v. *Jones,* 86 Ill. 373; *Comstock* v. *Henneberry,* 66 id. 212.

Such a bill lies to set aside deeds obtained by fraud. *Kennedy* v. *Northrup,* 15 Ill. 149.

But the scope of this bill is not alone to remove the clouds on title, but is also a bill to redeem. Where a court of equity once obtains jurisdiction on any ground, it will retain the same until it has adjusted all the rights of the parties, and this it will ever do under the prayer for general relief. *Isaacs* v. *Steel,* 3 Scam. 97.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

As respects the deed in question from Mary E. Taylor to Haworth, the first ground made for its invalidation is, that Haworth had constructive notice by record of Mrs. Taylor's prior conveyance of the same lands to Abijah Taylor, from the fact of Taylor's deed having been filed for record previously to the making of the deed to Haworth. The statute makes the filing of a deed for record the same as the record-

ing of it, as respects notice, and the only question upon this
point is, whether Taylor's deed was filed for record, within
the meaning of the statute, before the making and recording
of Haworth's deed.

Taylor's deed was formally filed for record June 15, 1866,
and the recorder's fees paid, but was not recorded until some
time in 1872.   Haworth's deed was made December 26, 1866,
and recorded on January 29, 1867.   The recorder gave testi-
mony that Taylor wanted him to file the deed for record, and
paid the recording fees; that Taylor said he was not particu-
lar about it being recorded right away; that he suspected his
wife would make conveyance to some other person for the
same property, and in case she did he wanted this deed put
on record immediately, and wanted witness to keep watch;
that witness put the deed in the "dead-head box," and kept
watch for some time, but at last forgot all about it,—the
"dead-head box" being where deeds are thrown that are not
paid for, and are not to be recorded.   In the entry book
of the recorder's office there appears an entry of the names of
the parties to the deed, the filing of the deed June 15, 1866,
the fee paid, and under the heading, "Remarks," the entry,
"Not to be recorded until ordered."   We take the recorder's
entry in the entry book as the evidence of the terms upon
which the deed was left for record, and they were, that it
was not to be recorded until ordered, and in consequence
thereof the deed was not recorded until after the making and
recording of the deed to Haworth.   The statute intends, by
the filing of a deed for record, the leaving of the deed for
record in due course.   This deed to Taylor was not so left,
but left to be recorded only when ordered, and there not hav-
ing been any subsequent order for its record until after the
deed to Haworth was made and recorded, we are of opinion
that Taylor's deed was not filed for record, within the mean-
ing of the statute, before the deed to Haworth, and that the
latter, at the time of taking his conveyance, was not affected

with constructive notice of Taylor's deed from the filing of the same for record.

Another ground for impeaching Haworth's deed is, that at the time he took it he had constructive notice of the existence of Taylor's previous deed, from the fact of Taylor's possession of the land. At that time Taylor was in the actual possession of the land by his tenant, Johnson, under a written lease made to the latter by Taylor on August 22, 1865, for a term of five years, commencing March 1, 1866. We think this was constructive notice, not only of Johnson's interest in the land, but of Taylor's as well. The inquiry upon which one would be put in such a case as to the occupant's right would have discovered that Johnson was but a tenant, which would have referred the inquirer further to the landlord as to his right, as it is not to be expected that a tenant would know what was the title of his landlord. *Pittman* v. *Gaty*, 5 Gilm. 186; *Franz* v. *Orton*, 75 Ill. 100; *Smith* v. *Heirs of Jackson*, 76 id. 254; *Whitaker* v. *Miller*, 83 id. 381; 3 Barbour's Ch. 316.

As at the date of the lease Taylor was not the owner of the land, but acquired title subsequently, on November 13, 1865, it is contended that the notice from the tenant's occupancy was notice only of Taylor's (the landlord's) rights at the time of the making of the lease, and not of his rights at the time of Haworth's deed, December 26, 1866. We do not concur in this view, although the authority cited (*Emmons* v. *Murray*, 16 N. H. 398,) lends somewhat of countenance to it. We regard the doctrine, as derived from the decisions of this court, to be, that where one purchases land of which another is at the time in the actual, open and visible possession, such possession is constructive notice to the purchaser of all rights whatever of the possessor in the land at the time of the purchase.

We find, then, the claim of title under Haworth's deed to be invalid, from the fact that at the time of taking the deed Taylor was in the actual possession of the land by his tenant,

which constituted notice to Haworth of Taylor's right to the land under his prior unrecorded deed. The reason given for the deed to Haworth is, that the sole consideration of the deed from Mrs. Taylor to Abijah Taylor was an agreement on his part to discharge the liens which were upon the Indianapolis property he conveyed to Mrs. Taylor; that Taylor failed to discharge the liens, and thereupon Mrs. Taylor, to save her Indianapolis property, sold and conveyed the lands which she had previously deeded to Taylor, to Haworth, for $3000 in cash, out of which she discharged and paid off said liens. Of course this was no legal justification for making the deed to Haworth.

In regard to Haworth's claim of title under the sheriff's sale, there are circumstances of a remarkable character attending that sale. In the first place there had been sold under the execution, and bid off by the plaintiff therein, one hundred and sixty acres of other lands for $580, which lands may be supposed to have been worth very much more than that sum. Why was not, then, the remaining insignificant sum of five dollars added to and included in that bid and sale, instead of going on afterward and selling the debtor's life interest in the lands in controversy for the sum of five dollars, the yearly rental value of which interest the decree in this case finds to have been $560? The two sales were made at one time,—March 20, 1867. Why should there have been two certificates of purchase made out, one for the other lands and another for the lands in controversy, and the former one placed upon record and the latter suppressed from the record? Where land is sold under execution, the statute requires the sheriff, within ten days from the sale, to file in the office of the recorder of the county in which the property is situated a certificate of the purchase, which shall be recorded by the recorder. In *Thomas* v. *Hebenstreit*, 68 Ill. 118, it was said the object, no doubt, of this provision of the statute was, that all persons interested in the title to the

land might, on inspection of the record, learn, among other things, when the land was sold, when redemption expired, etc. The certificate of purchase here for the other lands was filed for record and recorded August 6, 1867, (the time of the return of the execution,) but the certificate of purchase for the lands in controversy was not filed for record until August 8, 1875,——more than five years after the sale. On August 6, 1867, the sheriff made return of the execution with his indorsement thereon that he returned the execution, and fee bill satisfied in full by sale of property levied on, and naming it as the other lands than those in controversy, and stating the amount at which each tract sold, being in the aggregate $580, and the certificate of purchase filed for record on that day stated that those tracts were sold to the plaintiff in execution for $580,——the sum which the return said satisfied the execution and fee bill in full. Thus the public records informed Taylor that the execution had been satisfied in full by the sale of other lands than those in controversy, and misled him to understand that none of the lands in controversy had been sold. He was in ignorance of, and had no reason to suspect from the records, that these lands had been sold, but had reason therefrom to think the contrary. The practices which were adopted here were excellently well calculated to keep from Taylor knowledge of the fact of the sale of these lands under the execution. We think he is entitled to say that they did so, and especially in the case of such gross inadequacy of price; that they were the cause of the failure to redeem from the sale within the time given for that purpose by the statute, and therefore that in equity he should be permitted to redeem now, after the expiration of the statutory period for redemption. As to gross inadequacy of price lending aggravation to any irregularities in a sale, see *Dutcher* v. *Leake*, 44 Ill. 400 ; *Thomas* v. *Hebenstreit*, 68 id. 118. The bill asks, and makes offer, to redeem, and the decree allows redemption, in which we find no error.

A point is made as to Haworth being an innocent purchaser. He purchased only an equitable interest in buying the certificate of purchase, and took subject to the outstanding equities of Taylor, and occupies no better position than that of the plaintiff in the execution.

Objection is made to the jurisdiction to entertain the bill, because Haworth was in possession at the time of the filing of the bill, and that under decisions of this court a bill to remove a cloud upon title will not lie where the defendant is in possession. We think it enough to say that the bill being, in one of its aspects, to redeem, the bill in such respect was well brought, irrespective of possession by the defendant.

As a bill to redeem, objection is taken to it on account of the delay in the filing of the bill. Under all the circumstances of the case we do not consider that there can be any just imputation of *laches* to the complainant in not sooner filing the bill.

The decree adjudged a recovery against the defendant of $4707 for the balance of the rents and profits received by him from the land up to April 30, 1882. It is objected to this, that there was no prayer for an account in the bill, and that the remedy for the recovery of rents and profits should have been sought in a court of law. The bill made a proper case for an account, and we are of opinion it might properly be taken under the general prayer for relief, and that in order to the adjustment of all the rights of the parties with respect to the subject matter of the suit, it was proper to take the account in this case. It appears that on March 27, 1874, Taylor made a quitclaim deed of his interest in the land to Susan Welch, and that on September 23, 1881, she reconveyed to Taylor, and it is claimed that during the time intermediate those dates Taylor is not entitled to recover for rents and profits. The evidence shows this deed from Taylor was but a mortgage, it being a mere security for a debt, and as mortgagor, Taylor was entitled to the rents and profits of

the land, the condition of the mortgage being unbroken, and no claim of rents by the mortgagee.

It is claimed the amount allowed Taylor is too great. The value of the rents and profits may have been estimated too high, but whatever error there may have been in that respect was more than counterbalanced by the allowance of a deduction of the amount of the payments made by Mrs. Taylor in the discharge of liens upon the Indianapolis property, said liens being the ones hereinbefore mentioned in stating the reason given for Mrs. Taylor's making the deed she did to Haworth. The propriety of the allowance of this deduction, at least under the pleadings in the case, does not satisfactorily appear to us. We are inclined to think that because of this allowance any cause of complaint in respect of the amount decreed to Taylor is rather with Taylor than the defendant.

The decree of the circuit court must be affirmed.

*Decree affirmed.*

WALKER and SCOTT, JJ.: We hold that the Statute of Limitations barred all rents and profits accrued more than five years before the date of filing the bill. See *Harding* v. *Larkin*, 41 Ill. 413, which announces this rule.

*Filed at Springfield June 14, 1883—Rehearing denied January Term, 1884.*