THE FARMERS' NATIONAL BANK OF BUSHNELL

*v.*

THEODORE F. SPERLING.

*Filed at Springfield March 30, 1885.*

1. APPEAL—*without regard to amount involved—in suit to remove cloud upon title.* On bill to set aside a sheriff's sale of land on execution as a cloud upon a title, and to enjoin the making of a sheriff's deed, an appeal lies to this court from the Appellate Court, where the decision of that court is final, without regard to the amount in controversy.

2. SETTLEMENT—*payment—of a transaction amounting to payment.* A and B owning a tract of land as tenants in common, borrowed $3500, to secure which they gave their joint note, and a mortgage on the land. B took of this amount $800 for his individual use, and gave A his note for $800. Afterward, B sold and conveyed his interest in the land to A for $2000, subject to the incumbrance thereon of $3500, which A was to pay, and A, in making payment of the $2000, turned in B's note of $800 as part payment. After this, a bank recovered judgment against B, and had the land sold, and on bill by A to set aside the sale, claimed that A still owed B one-half of the $800 note: *Held,* that the settlement of the parties, being in good faith, was conclusive, and that the entire purchase money had been paid by A.

3. PARTIES—*in chancery—on bill to set aside a sheriff's sale as a cloud on title.* On bill by the owner of land to set aside a sale of it on execution, against a former owner and another, as a cloud upon title, the defendants in

18—113 ILL.

the execution, though proper parties, are not indispensable parties, where no decree is entered affecting their interest, such as, vacating the entry of satisfaction of the judgment against them.

4. SAME—*time to object for want of proper parties.* Where the parties omitted in a bill in chancery are not indispensable to a decision of the case upon its merits, it will be too late to make the objection at the hearing that they are not made parties; but when the rights of the parties not before the court are intimately connected with the matter in dispute, so that a final decree can not be made without materially affecting their interests, the objection may be taken at the hearing, or on appeal or error.

5. EXECUTION SALE OF LAND—*in case no title passes—rights of the plaintiff in execution—how far the rule of caveat emptor applies.* A plaintiff in execution is not in all cases, as a matter of right, entitled to have a satisfaction and levy of an execution vacated, merely because no title passed at the sale. In general, the doctrine of *caveat emptor* applies to such sales; and although the fact that the defendant in execution had no title, may, when unexplained, justify a court of equity in vacating the levy and satisfaction on the ground of mistake, yet that court would not interfere where it was clearly shown that the plaintiff in the execution had willfully, with full knowledge of all the facts, caused a levy upon the property of a person other than the defendant in the execution.

6. NOTICE—*possession of land as notice of occupant's rights.* Where one tenant in common of land, while in possession of the whole, paying rent to his co-tenant, purchases the interest of the latter, and takes a deed therefor, which he fails to record until after the recovery of a judgment against his grantor, his continuous possession of the land will operate as notice to the judgment creditor of his rights as purchaser, and he may have a sale of the undivided half thereof set aside as a cloud upon his title.

7. BILL IN CHANCERY—*sufficiency of allegation of possession.* A bill to set aside a sale of land on execution, on the ground of notice to the judgment creditor of the complainant's purchase of the premises before the recovery of the judgment against the former owner of an undivided half thereof, alleged that the complainant took possession of the land several years before the recovery of the judgment, when he rented of the owner of the other half interest, and that he had been in the sole and exclusive possession of the property ever since; and in another place, that the judgment creditor had notice of his possession: *Held*, that the allegation of notice of the complainant's rights by possession was sufficient on error.

APPEAL from the Appellate Court for the Third District; —heard in that court on appeal from the Circuit Court of McDonough county; the Hon. S. P. SHOPE, Judge, presiding.

Messrs. WHEAT & IMES, and Messrs. TUNNICLIFF & BACON, for the appellant:

The bill charges notice only at the time of the sale. The notice, to avail, must be before or when the judgment was recovered. *Massey* v. *Westcott,* 40 Ill. 160.

The records here showing title in Theodore and Abram B. Sperling, jointly, and the possession of Theodore being consistent with his own, and not inconsistent with Abram's, title, was no notice to any one of his having purchased Abram's interest. *Stone* v. *Cook,* 79 Ill. 424; *Fassett* v. *Smith,* 23 N. Y. 252; *Richardson* v. *Haynes,* 1 La. Ann. 286; *Bodrean* v. *Bergeson,* 4 id. 84; *Rodgers* v. *Hussey,* 36 Iowa, 664; *Reynolds* v. *Ruckman,* 35 Mich. 80; *Atwood* v. *Bearst,* 47 id. 72; Wade on Law of Notice, secs. 297, 298; *Emmons* v. *Murray,* 16 N. H. 286; *Plumer* v. *Robertson,* 6 S. & R. 179; *Palmer* v. *Bates,* 22 Minn. 522.

As to when notice to an agent, trustee, etc., affects his principal, see *Fairfield Savings Bank* v. *Chase,* 72 Maine, 226; *McCormick* v. *Wheeler,* 36 Ill. 114; *Choteau* v. *Allen,* 70 Mo. 290; *Ford* v. *French,* 72 id. 250; *Horseman* v. *Girard Association,* 81 Pa. St. 256; *Pringle* v. *Dunn,* 37 Wis. 449.

Appellee failed to pay the full purchase money to the extent of $400, and interest thereon.

The defendants in the execution were necessary parties. Rorer on Judicial Sales, secs. 1145-1147; *Prentice* v. *Kimball,* 19 Ill. 320.

Messrs. NEECE & BLAZER, for the appellee:

As to an appeal lying to this court, see section 90 of the Practice act; section 8 of the Appellate Court act; *Sedgwick* v. *Johnson,* 107 Ill. 385; *Trustees of Schools* v. *Potter,* 108 id. 442; *Umlauf* v. *Umlauf,* 103 id. 657; *Talcott* v. *Schule,* 95 id. 201; *Baber* v. *Railroad Co.* 93 id. 342; *Walker* v. *Malin*

& Co. 94 id. 596; *Carlin* v. *Fox*, 98 id. 146; *Peck* v. *Herring-ton*, 104 id. 88.

Open and notorious possession of land is sufficient to put subsequent purchasers and incumbrancers upon inquiry as to the rights of the occupant. *Keys* v. *Test*, 33 Ill. 316; *Truesdale* v. *Ford*, 37 id. 210; *Reeves* v. *Ayers*, 38 id. 418; *DeWolf* v. *Pratt*, 42 id. 198; *Warren* v. *Richmond*, 53 id. 52; Wade on Law of Notice, 116, 120.

The objection for want of parties is for the first time raised in this court upon appeal, when, we think, it was the duty of appellant, if such is the case, to have raised that question in the court below, by either demurrer, plea or answer. If any defect such as is urged, does in fact exist, it is manifest upon the face of the bill, and hence should have been raised by demurrer interposed for that purpose. Story's Eq. Pl. sec. 75; 1 Daniell's Ch. Prac. 285, 286; *Conwell* v. *Watkins*, 71 Ill. 488; *Allen* v. *Woodruff*, 96 id. 11.

The omission of the judgment debtors as parties could not prejudice appellant, and as their rights were not affected by the decree, they were not indispensable parties. *Manf. Co.* v. *Daggett*, 84 Ill. 557; *Walsh* v. *Wright*, 101 id. 178; Story's Eq. Pl. secs. 76, 77, and notes.

The principle of *caveat emptor* applies to judicial sales, unless the party is misled by fraud. *Finley* v. *Mayer*, 42 Ill. 350; *Bishop* v. *O'Connor*, 69 id. 431; *Roberts* v. *Hughes*, 81 id. 130; *Vanscoyoc* v. *Kimler*, 77 id. 151; *Holmes* v. *Shaver*, 78 id. 578; *Bassett* v. *Lockard*, 60 id. 164.

The principle is well established that a levy on personal property under a *fi. fa.* is *prima facie* a satisfaction of the debt. *Trenary* v. *Cheever*, 48 Ill. 28; *Smith* v. *Hughes*, 24 id. 270.

Abram B. was to pay the whole of the $800 to the Bulls, and each of them the balance, $2700, so that Abram's note properly paid the amount it called for.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

Theodore F. Sperling and Abram B. Sperling in the fall of 1868 purchased the north-west quarter of section 9, township 7, north, range 3, west, in McDonough county, of Charles Chandler. In the spring of 1869 they entered into possession, and commenced making improvements thereon, and they continued to occupy and improve and cultivate it, as tenants in common, until in 1873, when Abram B. rented his undivided interest therein to Theodore F., and thereafter Theodore F. paid Abram B. rent for such interest, until April, 1877, when Abram B. sold his undivided interest in the tract to Theodore F. Since that time Theodore F. has been in the sole and exclusive possession of the entire tract, cultivating and claiming it as his own. Charles Chandler conveyed the tract to Theodore F. and Abram B. by deed dated June 15, 1876, which was recorded in the proper office on the same day. Abram B. conveyed his undivided interest in the tract to Theodore F. by deed acknowledged on the 18th of April, 1878, and delivered about the 1st of May, 1878, but which was not recorded in the proper office until the 15th of January, 1880.

The Farmers' National Bank of Bushnell obtained a judgment in the McDonough circuit court, against Abram B. Sperling and John R. Sperling, on the 12th of September, 1879, for $515.66, and costs of suit. Execution was issued on that judgment on the 4th of October, 1879, and it was subsequently levied on the north-west quarter of section 9, township 7, north, range 3, west, in McDonough county. On the 20th of March, 1880, the tract was sold by the sheriff, by virtue of this levy, to the bank, and a certificate of purchase was issued to it, which was recorded on the 3d of May, 1880. The decree of the circuit court sets aside this sale, upon the ground that Theodore F. Sperling was the sole owner of the land by virtue of the deed from Abram B. to him, and that

the bank is chargeable with notice of this ownership, by reason of his possession of the tract at and before the time it obtained its judgment.

A motion was made to dismiss the appeal upon the ground that there is no question of law certified by the Appellate Court, and the amount in controversy is less than $1000. The motion is overruled. The bill is not for the recovery of any sum of money, but simply to set aside a sale as a cloud upon a title, and to enjoin the making of a deed. In such cases an appeal lies directly to this court from the Appellate Court, when the decision of that court is final. *Peck* v. *Herrington*, 104 Ill. 88; *French* v. *Gibbs*, 105 id. 523.

The grounds upon which a reversal of the decree below is sought, necessary to be noticed, in the view we take of the case, are three: First, the proof does not show the payment of the purchase money, in full, by appellee, before appellant's judgment was obtained; second, Abram B. and John R. Sperling were indispensable parties to the bill; and third, the possession of Theodore F., under the circumstances, was not constructive notice that he was sole owner of the property. In our opinion, neither of these grounds is tenable.

*First*—Whether the payment of the purchase money was in fact made by appellee, in full, before appellant's judgment was obtained, depends entirely upon the veracity of Abram B. and Theodore F. They swear that it was. Counsel for appellant do not claim to have successfully impeached them, but only that on their own statement $400—one-half the amount of a certain $800 note—is unpaid. The price Theodore F. was to pay Abram B., they say, was $2000, subject to incumbrance. They had borrowed of the Bulls, of Quincy, $3500, for which they gave their joint promissory note, and they secured it by a deed of trust on the tract. Of this $3500, in fact only $2700 was for the joint benefit of Abram B. and Theodore F. The other $800 was for the individual benefit of Abram B., only. He gave his individual note to Theodore F.

for this $800, and when he sold his interest to Theodore F., he took it up, as a payment of so much of the $2000. Appellant's position is, inasmuch as both signed the $3500 note, Abram B. should only be liable, and therefore should only have given his note to Theodore F. for one-half the $800,— in other words, that he is liable on the note for one-half, and in getting the whole of the $800 he is only getting, to that extent, one-half that he is not liable for. This, as a mere statement of the apparent position of the parties, on the face of the papers, is entirely correct; and if Abram B. had paid one-half of the $3500 note before he sold his interest to Theodore F., or if, as between them, he had continued his liability thereon, he would have remained liable to Theodore F. for only one-half the $800. But it was competent for them to agree, as they say they did agree, to settle upon the basis of Theodore F.'s liability for the whole note,—if he had paid it, recognizing that fact, and if he had not paid it, providing that he should do so,—and in that event it would stand just as if they had jointly borrowed $2700, payment of which was made or assumed by Theodore F., and Abram B. had individually borrowed $800, payment of which was made or assumed by Theodore F., in which case it would be clear to the apprehension of all that Abram B. would owe Theodore F. the whole of the $800, as for so much money paid to his use. The parties are not entirely lucid in their explanations, but we think the fair conclusion, from their evidence, is, that the $800 note was accepted in payment of that amount of the $2000, upon the hypothesis, as between themselves, that the incumbrance proper upon the land, subject to which the purchase was made, was to be regarded as only $3500, less the $800 received by Abram B., (or $2700,) and that the whole amount had been or was to be paid by Theodore F.,—or, to state it a little differently, that Abram B. was to be considered as having paid $800 on the $3500 which he had received from Theodore F., in part payment of the $2000. Whether,

when the $800 note was given, it was intended as a mere obligation of indemnity, or in consideration that, as between the parties, Theodore F. should alone be liable on the $3500, is, perhaps, not very important, since, when Abram B. sold his interest to Theodore F., so long as the consideration was adequate there was no objection to his taking for his interest what he pleased, and they might, as between themselves, in speaking of the incumbrance that was to be assumed by Theodore F., treat it as only extending to or embracing the money actually borrowed to extinguish a prior incumbrance on the land,—that is, $2700. So long as they understood each other, and no mistake was made, others could not object that they had miscalled terms, or come to inaccurate conclusions. They swear no mistake was made, and it is not satisfactorily shown they are under misapprehension, or testify willfully false.

*Second*—This objection was not made in the circuit court. No decree was sought or rendered against Abram B. Sperling or John R. Sperling. They can not, therefore, be affected by the decree. (*Whiting* v. *Bank of United States,* 13 Pet. 1.) It is impossible to conceive why the court can not decree, as between the purchaser of land at a sheriff's sale and the owner of the land, in regard to the effect of the sale, without having the defendant in execution in court. If it were sought thereby to vacate the satisfaction of the execution and the levy, undoubtedly the defendant in execution would be a necessary party, because the decree would directly affect him; but a plaintiff in execution is not, in all cases, as a matter of right entitled to have a satisfaction and levy of an execution vacated merely because no title passed at the sale. In general, the doctrine of *caveat emptor* applies to *such sales,* and although the fact that the defendant in execution had no title to the property, might, unexplained, be regarded as sufficient evidence of mistake to justify a court of equity in rescinding the sale and vacating the levy, and any satisfaction produced by

the sale, yet cases may be conceived of where courts of equity would not do so,—as, for instance, a court of equity would hardly interfere in such a case where it was clearly made to appear that the plaintiff in execution had proceeded willfully, with thorough knowledge of all the facts, and caused an execution to be levied upon the property of another, in regard to the title to which there was no reasonable pretence that the defendant in execution had any claim. A court of equity will not permit itself to be used as a means of merely harassing and annoying individuals, or of gratifying the caprices and variable humors of parties. And in any case, a plaintiff in execution is not obliged to have a levy or satisfaction of an execution vacated, although he may have derived no title by his purchase at the sale. If he does not choose to do so, it can not concern the party whose property has been illegally sold, but who has recovered his property. The latter is entitled to have his sale set aside, and his interest in the matter there ceases. So, here, when the bank was brought into court, it might have objected that the defendants in execution should be brought before the court, so that the rights of all should be settled in a single proceeding; but we are unable to perceive why it might not waive that objection, and contest with the appellee the only question between them,—namely, whether his land could be lawfully sold on execution,—and contest the question of vacating the levy and the satisfaction of the execution, with the defendants in execution, afterwards. We concede the defendants in execution would have been proper parties; but were they necessary (*i. e.*, indispensable) parties? The rule is familiar, and was laid down in *Prentice* v. *Kimball*, 19 Ill. 323, that where the parties omitted are not indispensable to a decision of the case upon its merits, it will be too late to make the objection at the hearing; but where the rights of the parties not before the court are intimately connected with the matter in dispute, so that a final decree can not be made without materially affecting their interests,

the objection may be taken at the hearing, or on appeal, or on error. In that case the satisfaction of the judgment was vacated without defendant therein having been made a party to the proceeding to vacate, and, of course, if the vacation was valid, it directly affected him to the amount of the judgment; while here, we have seen, the omitted parties can not be affected by the decree. It has not been established by any authorities referred to by counsel, (and, we think, can not be, by respectable authorities,) that a sale can not be set aside unless the levy of the execution, and any satisfaction thereof produced by the sale, be vacated at the same time and in the same proceeding; and unless this can be done, the most that can be said is, these omitted parties would have been proper parties, but they are not indispensable.

*Third*—This court has held, in opposition to the rule quoted by counsel for appellant from Wade's Law of Notice, secs. 297, 298, and *Emmons* v. *Murray*, 16 N. H. 386, that the actual, open and visible possession of real estate is constructive notice to persons purchasing it, of whatever rights the possessor then has in the land. In *Coari* v. *Olsen*, 91 Ill. 273, we held, in obedience to what we understood to be the common law, and upon the faith of authorities therein referred to, that where a tenant changes his character by agreeing to purchase, his possession amounts to notice of his equitable title as purchaser. In *Haworth* v. *Taylor*, 108 Ill. 275, we held that the possession of a tenant is constructive notice of the actual title of the landlord at that time, although that title was acquired subsequent to the time the landlord leased to the tenant. It was there said: "As at the date of the lease Taylor was not the owner of the land, but acquired title subsequently, on November 13, 1865, it is contended that the notice from the tenant's occupancy was notice, only, of Taylor's (the landlord's) rights at the time of the making of the lease, and not of his rights at the time of Haworth's deed,—December 26, 1866. We do not concur in this view, although the authority

cited ('*Emmons* v. *Murray,* 16 N. H. 398,) lends somewhat of countenance to it. We regard the doctrine, as derived from the decisions of this court, to be, that where one purchases land of which another is at the time in the actual, open and visible possession, such possession is constructive notice to the purchaser, of all rights whatever of the possessor in the land at the time of the purchase." This rule binds the bank with notice, by Theodore's possession at the time judgment was obtained, of the title he then actually had.

Objection is urged that the bill does not, with sufficient certainty, allege that Theodore had possession when the judgment was rendered. The bill is inartistically framed in this respect; but it is alleged that Theodore took possession in 1873, when he rented of Abram, and that he has been in the sole and exclusive possession of the property ever since, and in another place it is alleged that the bank had notice of his possession. This, we think, on error, is sufficient. No demurrer was filed to the bill on this account, and the objection was not otherwise urged at the hearing.

The decree is affirmed.

*Decree affirmed.*