## James Dinsmoor v. Abram Wolber.

1. MASTER AND SERVANT—*Liability for the Acts of the Servant.*—The master of a servant is chargeable with the injurious consequences of the servant's acts, done while in the service of the master, and within the scope of his employment and authority.

2. SAME—*Master's Liability.*—If a servant, driving his master's wagon along the highway, carelessly runs against the carriage of another person and injures him, the person injured has a right to treat the wrongful act as the act of the master.

3. SAME—*Liability for Acts Willful or Only Careless.*—Where the master sets the servant to work about his own business, with the right to direct and control him as to the manner of doing it, he ought to answer to others for whatever injury was suffered by reason of what his servant does, or of the manner in which he does it; and equally so whether it be willful or only careless or unskillful.

4. SAME—*Exemplary Damages.*—Whenever exemplary damages are recoverable if the act is done by the master himself, they are equally recoverable when the act is done by his servant.

Action in Case, for personal injuries. Appeal from the Circuit Court of Whiteside County; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the May term, 1899. Reversed and remanded. Opinion filed October 12, 1899.

Dinsmoor v. Wolber.

JARVIS DINSMOOR, attorney for appellant.

J. E. McPHERRAN, attorney for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was an action on the case, by appellant against appellee, brought to recover damages for injuries to himself and property and loss of services of his wife, resulting from the alleged negligence of a servant of appellee.

The declaration contained three counts. The first charged that while appellant and his wife, on April 28, 1897, were riding along a certain public highway, a servant of appellee, driving a team of the latter, so carelessly and negligently drove said team that the same, and the tongue of the wagon to which they were attached, struck the carriage and horse of appellant, crushing the carriage, injuring the horse and throwing appellant to the ground, whereby he was damaged, etc. The second count charged that by reason of said alleged negligence on the part of the servant of appellee, plaintiff became sick and was prevented from attending to his business, was deprived of the services of his wife for a long space of time, was obliged to pay out money for her care and nursing and for extra servants, and also for the repair of his carriage, etc. The third count charged that the injury was caused by the willful, wanton, malicious and careless conduct of the defendant. To this declaration the general issue was filed, and upon the trial the jury found a verdict for appellee, and judgment was entered against appellant for costs. Appellant complains that the verdict is against the weight of the evidence; that the court excluded proper evidence and improperly instructed the jury.

It appears from the evidence that, at the time appellant received the injury complained of, he was driving along at a rapid trot in a covered buggy, going from Sterling toward his home, some two and a half miles distant. It was raining a little and the top of the buggy was up and the side curtains on. He was driving in the middle of the road,

which at that place was comparatively level and some sixty-seven feet wide, when he was run into by a team belonging to defendant and driven by one Matthias Appenzeller, his servant. Appellant and his wife were thrown forward upon the ground, receiving severe injuries, and the buggy was badly broken. He testified that his horse ran away and was so badly frightened as to be ruined for use as a family horse thereafter. Appellee was a farmer, living some seven or eight miles north of Sterling, and on the day in question he and his said servant had been to that place to deliver two wagon loads of stock. Appellee drove home with one of the teams a short time after the stock was delivered, directing Appenzeller, as he says, to come home, as he had lots of work for him. The latter, however, remained until about six o'clock P. M. before starting back. That the injuries complained of were caused, at the time alleged, by the negligence or willfulness of Appenzeller, the servant of appellee, is not denied. Appellee, however, knew nothing concerning the matter until some time after it occurred, and insists that, under the circumstances of the case, he is not liable for the acts of his said servant.

In Reeve's Domestic Relations, at page 358, the law upon this question is thus stated:

" This subject may be illustrated by the following case: A, the servant of B, is employed by him to drive his wagon. A, whilst driving his wagon, leaves it in the road and commits a battery upon C. B would not be liable. But if A had continued driving the wagon and drove with violence over C, with design to injure C, B would have been liable. In the first place, A had abandoned his master's business; in the latter case he was in the immediate pursuit of it, though done in such a manner as to injure another person; or, in other words, in the first place he was not driving his master's wagon, which he was employed to do; in the last he was.'>

Wood, in his work on Master and Servant, Section 280, states the rule as follows:

" If a servant driving his master's carriage along the highway, carelessly runs over a bystander, * * * the person injured has a right to treat the wrongful act as the act of the master; *qui facit per alium, facit per se.* If the master

Dinsmoor v. Wolber.

himself had driven his carriage improperly  *  *  *  he would have been directly responsible, and the law does not permit him to escape liability because the act complained of was not done by his own hand."

In Chicago City Railway Co. v. McMahon, 103 Ill. 485, it is said :

" Few actions would be maintainable if a recovery could be had only in cases where express authority is given or the agent is required to commit the wrong.  It is a general rule, without exception, that when a servant exercises his power or performs his duty in so careless or negligent a manner that wrong ensues to another, the master is liable in damages."

In the case of Christian v. Irwin, 125 Ill. 619, where the plaintiff and another man were riding in a buggy along a street in Chicago, and at the intersection of another street, and while they were observing due care for their personal safety, were run into by the horse and wagon of defendant, then being driven by his servant, by which plaintiff sustained severe injuries, it was held that the master was liable for the misconduct of his servant.

It is contended by appellee that in this case the injury complained of was caused by the willful misconduct of the servant, outside of the line of his employment, and that therefore there should be no recovery.  We do not think this position, however, is sustained by the authorities.

In Arasmith v. Temple, 11 Ill. App. 39, it is said, in speaking of the liability of the master for the acts of his servant, "having set the servant to work about his own business, with the right to direct and control him as to the manner of doing it, he ought to answer to others for whatever injury was suffered by reason of what he so does, or of the manner in which he does it; and equally so whether it be willful or only careless or unskillful."

To the same effect is the case of T. W. & W. R. R. Co. v. Harmon, 47 Ill. 298.

There is no controversy as to the main facts in the case. On the occasion in question the servant was driving home from market, whither he had gone in company with his

master at an earlier hour, along the road usually traveled from such market to the home of his master, driving the latter's team, and, in that regard, doing the very thing for which his master had employed him, and while so engaged, he carelessly or willfully caused the injury complained of. Under such circumstances we think appellee was liable for the wrongful act of his servant, and that the jury should have found for the appellant.

Under the third count of the declaration proof was introduced tending to show that appellee's servant willfully, wantonly and maliciously ran into appellant, thereby inflicting the injuries complained of. The trial court refused appellant's twelfth instruction, which stated that if the jury found appellee guilty, and that the injury complained of was inflicted by the gross, willful and wanton recklessness of the latter's servant, they were at liberty to give exemplary damages against appellee; and gave appellee's third instruction, which advised the jury that exemplary damages could not be recovered.

Wood's Master and Servant, Section 323, in discussing this subject, says :

" It may be regarded as settled by the better class of cases that, whenever exemplary damages would be recoverable if the act had been done by the master himself, they were equally recoverable when the act was done by his servant."

The authorities are not harmonious in regard to this question, but we are of opinion Illinois has substantially adopted the rule above quoted.

In I. C. R. R. Co. v. Hammer, 72 Ill. 347, which was a suit for injuries alleged to have been caused by servants of defendant, and charged in the declaration to have been wanton and malicious, the trial court had instructed the jury that for gross negligence of appellant they would be at liberty to give punitive damages. This was held to be incorrect, but it was said :

" If its servants, while in the employment of the company, engaged in carrying on the business of the company, should willfully or wantonly produce injury to others, then the

company would, no doubt, be liable to such damage. With its servants, a mere omission of duty, although grossly negligent, should not be sufficient, but some intention to inflict the injury, or a reckless, wanton disregard for the safety of others, should appear to warrant punitive damages." See also T., W. & W. R. R. Co. v. Harmon, *supra;* I. & St. L. R. R. & C. Co. v. Cobb, 68 Ill. 53; West Chicago St. R. R. Co. v. Morrison, Adams & Allen Co., 160 Ill. 288.

It is true that the above cases all involved actions against railroad corporations for injuries alleged to have been caused by their servants, but the rule adopted appears to apply with equal force to cases involving the liability of natural persons under like circumstances. The case of Hawes v. Knowles, 114 Mass. 518, was very much like the one at bar. The plaintiff offered evidence to show that the servant of the defendant (a natural person), who was driving defendant's stage coach at the time of the collision, drove against the wagon of the plaintiff, wantonly as well as carelessly and negligently. The trial court held that if there was wantonness or mischief in the act of the servant, affecting the plaintiff injuriously in body or mind, that fact would tend to enhance the damages, and this ruling was sustained by the Supreme Court.

We are, therefore, of the opinion the court should have given the instruction asked for by appellant, and refused the one given for appellee upon the above subject.

Upon the trial appellant offered to show that Appenzeller had been seen upon the highway before the time in question in an intoxicated condition, and that the person who saw him told appellee that the servant was " awful drunk, and did not know anything about driving a horse." This evidence was excluded and an exception was taken. There was no charge in the declaration that appellee had employed an incompetent servant, and consequently no error in excluding the testimony.

For the reasons above stated, however, the judgment will be reversed and the cause remanded.