HENRY DIETERS v. ST. PAUL GASLIGHT COMPANY and Another.[1]

June 20, 1902.

Nos. 13,015—(158).

### Master and Servant—Verdict Sustained by Evidence.

In an action to recover damages for personal injuries alleged to have been caused by the negligence of defendants, it appears .that both defendants are corporations organized· for the purpose of furnishing electric light and power to their patrons, in the conduct of which business they occupied the same premises, employed the same servants, and were otherwise more or less jointly associated, though separate and distinct corporations,· and distinct accounts of transactions and expenses were kept. At the time complained of, and for some time prior thereto, plaintiff was in the employ of both defendants, performing services for each company portions of the time, and being paid by each for the time employed for each separately. He was injured while engaged in the work of his employment, and brought this action to recover damages therefor. The evidence presented in the record is examined, and held to justify the verdict of the jury to the effect: (1) That plaintiff was in the employ of both defendants, and engaged in the performance of his duties as such, at the time of his injury; (2) that the evidence is sufficient to sustain a finding that defendants were guilty of negligence; and (3) that plaintiff did not assume the risks, nor was he chargeable with contributory negligence.

### Negligence—Trapdoor.

The premises occupied by defendant were leased from a third person, and were also occupied in part by other tenants. The negligence causing plaintiff's injury was in the alleged failure of defendants to keep certain trapdoors leading to the basement of the building in proper repair for use. It is held that, as defendants furnished the premises in question as a place in and about which plaintiff was to perform his work, it was their duty to keep the same in reasonably safe repair, and they cannot absolve themselves from liability for failure to do so by showing that the premises were also occupied by other tenants and as to such tenants it was the duty of the owner of the premises to keep the same in repair.

### Assignments of Error.

Various assignments of error considered, and *held* to present no reversible error.

[1] Reported in 91 N. W. 15.

Action in the district court for Ramsey county to recover $3,000 for personal injuries. The case was tried before Kelly, J., and a jury, which rendered a verdict in favor of plaintiff for $2,700. From an order denying their separate motions for judgment notwithstanding the verdict or for a new trial, on condition that plaintiff consent to a reduction of the verdict to $2,000, defendants appealed. Affirmed.

*Squires & Begg*, for appellants.

*John H. Ives*, for respondent.

BROWN, J.

Action to recover damages for personal injuries alleged to have been caused by the negligence of defendants. Plaintiff had a verdict in the court below, and defendants appeal from an order denying their alternative motion for judgment notwithstanding the verdict, or for a new trial.

The facts are as follows: Both defendants are corporations organized and created under the laws of the state of Minnesota, engaged in the business of furnishing electric light and electric power to their patrons in the city of St. Paul. In the conduct of this business they occupied the same premises, employed the same servants, and were otherwise, more or less, jointly associated in the business stated, though separate and distinct corporations, and separate and distinct accounts of expenses were kept. At the time complained of, namely, October 26, 1899, and for some time prior thereto, plaintiff was in the employ of both defendants; and his duties were, as expressed by witness Gille, who was superintendent and general manager of both corporations, to do trucking and to make himself generally useful in and about the affairs of the corporations, delivering goods and performing such work as might be assigned from time to time to him. At the time in question he was engaged with other servants in removing a transformer, an appliance used in connection with an electric light plant, from the basement of the building occupied by defendants; and, by reason of the defective condition of a trapdoor opening from the sidewalk into the basement, plaintiff was injured. One finger of his hand was broken, the hand otherwise injured, and the

usefulness of it greatly impaired. Defendants assign numerous errors as grounds for a judgment in their favor, or for a new trial, but we need not refer specially to them all; only some of the main propositions require special mention.

It is first contended by the defendant Edison Electric Light Company that, as plaintiff was at the time of his injury performing services for the Gaslight Company, it is not liable, and that the latter company is alone responsible for his injury. The affairs of both corporations were conducted practically by the same set of employees. The same person occupied the position of superintendent and foreman of both companies. Plaintiff was employed by both, but paid by each company separately in accordance with the extent of services rendered to each, the officers determining from day to day which company should pay his wages for the day. It is claimed that on the day in question he was in the employ, or "carried on the pay roll," as expressed by the witnesses, of the Edison Company, and that at the time of the accident he was engaged, with other servants, doing the work of the Gaslight Company. The Gaslight Company owned the transformer, and it was being removed from the basement of the building at its instance and in its interest, but the work was being performed under the directions of a foreman who represented both companies, and by servants, including the plaintiff, in the common employment of each. We think it unnecessary to enter into any extended discussion of this feature of the case; the evidence made it fairly one for the jury to determine whether plaintiff was in the service of one or both companies at the time of his injury, and their verdict in the premises is amply sustained.

It is also insisted that there was no negligence on the part of defendants, or either of them, because of the fact that the door in question was out of repair. This is based in part upon the contention that, as defendants were tenants in the building, with control over only a portion of the same, there being other tenants therein, the duty to keep the premises in safe repair was upon the owner of the building, and that defendants cannot be charged with negligence for a failure in that respect.

Some cases are cited, in support of this contention, wherein the

duties of landlord and tenant in respect to keeping approaches to leased premises in suitable repair for use are discussed, and wherein it is held that such duty rests upon the owner of the premises, and not upon the tenant. But those cases can have no application to the case at bar; they are based upon an entirely different principle of the law, viz., the rules governing between landlord and tenant. The principles applicable to the case in hand are those of master and servant, and the duty the master owes the servant in respect to providing him with safe instrumentalities and a safe place in which to perform his labors. The duty to furnish such instrumentalities and safe place to work, and to keep and maintain them in reasonably safe condition for use, is, as between master and servant, absolute, and the master cannot absolve himself from responsibility in that behalf by showing that the premises furnished by him were rented from a third person, and were jointly occupied by him with other tenants. Whatever may be the rights between the master and a third person making use of the premises in transactions with other tenants, they in no way affect the rules or principles of law applicable between the master and his own servants. Defendants having provided the place in question as a place in and about which their servants were required to work, and having, as to such servants at least, the control of the trapdoor, it was their duty to keep the same in reasonably good condition for use. It was clearly a question for the jury to determine whether the failure to provide the door with proper hinges was negligence on their part.

But if we concede, in accordance with appellants' contention, that the full extent of the master's duty in cases where the premises occupied by him are leased from a third person, and his occupancy is jointly with other tenants, is to warn his servants of the dangers incident to their use, and that he is under no duty or obligation to keep or maintain them in proper repair, the evidence in this case, as to whether such warning was in fact given, made the question one of fact for the consideration of the jury. There is no claim that a warning of this particular defect was given plaintiff except at the time he was engaged in the act resulting in his injury, and he testified that he heard no such warning. But we do

not concur in the contention that the master may thus absolve himself from the obligations imposed upon him by law in respect to furnishing his servants with a safe place to work and with safe appliances. Whether the act of defendants in making use of the door in the condition in which it was shown to have been— without hinges—was an act of negligence, was a question of fact. Without hinges the door was in an unnatural, and not in its ordinary, condition; and it was for the jury to say whether an accident of the kind complained of might naturally result from the use of the door in that condition.

It is also contended that plaintiff's injuries were caused by the negligence of a fellow servant, and that therefore defendants are not liable. The manner in which plaintiff was injured is disclosed by the evidence about as follows: In removing a transformer from the basement of the building it was necessary to make use of the large double trapdoors in the sidewalk through which entry to the basement was had. The doors were large, made of boiler plate iron, and quite heavy. The hinges on one of them were out of repair and had been for a number of years. Plaintiff was directed to assist another servant in opening the doors preparatory to removing the transformer, and, in compliance with that order, he took hold of one end and the other servant the other end. After raising the door the servant at the other end dropped his end pursuant to directions from the foreman having charge of the work, which direction plaintiff did not hear, and it fell down the stairway into the basement, seriously injuring plaintiff's hand. The contention on the part of plaintiff is that the proximate cause of the accident was the defective condition of the hinges, while defendants insist that the immediate cause was the act of the fellow servant in dropping the door without notice or warning to plaintiff. It is claimed that, when the foreman directed the parties to open the doors, he informed them that the hinges to this particular door were broken, and warned them to proceed with care. Whether he did this or not was a disputed question. Plaintiff testified that he heard no such warning and was not aware that the hinges were broken. It is very clear that, had the hinges of the door been in proper repair for use, no accident whatever of

this kind would have happened. It is also true, perhaps, that had the fellow servant not dropped his end of the door, as he did, plaintiff would not have been injured. But as plaintiff was not aware of the absence of the hinges he had the right to act on the assumption that the door was in proper condition for use, and the evidence is not such as to charge him, as a matter of law, with actual or constructive knowledge of the defect complained of.

Counsel for appellants assign as error, in this connection, that the court in its instructions to the jury practically informed them that the evidence was conclusive of defendants' negligence in this respect; but the charge of the court does not sustain this contention. The question was fairly submitted to them to determine, and properly so. Campbell v. City of Stillwater, 32 Minn. 308, 20 N. W. 320.

There is nothing to the contention that plaintiff assumed the risks incident to the use of the door in its defective condition. If plaintiff knew of the defect, or could have discovered it by the exercise of ordinary care and prudence, the contention would be sound, but he testified that he was not aware of its defective condition; and we find no reason for concluding that his testimony in this respect was not true, nor of concluding that he could have discovered it by the exercise of ordinary care. It is true that he had moved other articles through the doors prior to this, but the evidence is not conclusive that he was aware of this defective condition. Counsel for appellants have taken the charge of the trial court, and isolated portions of the same are assigned as error. We have examined all of these very carefully, and find no error of sufficient importance to require a reversal of the case. Taking the charge of the learned court as a whole, it is very full, clear, and complete. The rules of law applicable to the questions presented are all stated to the jury with accuracy and precision and the jury was fully informed upon every question in the case. Perhaps some portions of the charge now objected to (they were not excepted to on the trial) may, if taken alone, be technically incomplete; but, taken in connection with the charge as a whole, we are unable to say that defendants were in any way prejudiced by the matters now complained of. We have examined all the

assignments of error with care, and find nothing on which to base a reversal of the order appealed from. The damages awarded by the jury, though quite large, are not, as reduced by the trial court, so excessive as to justify interference by this court.

The order appealed from is affirmed.