## Perry Asplund, Defendant in Error, v. The Conklin Construction Company et al., Plaintiffs in Error.

### Gen. No. 5493.

1. NEGLIGENCE—*when construction company and owning company jointly liable.* Where a construction company has the same officers as the company for which it is doing the work under a contract, or where one company is organized as an instrument in the hands of another for construction purposes, or where both companies are corporations occupying the same premises, employing the same servants, and more or less jointly associated, though separate corporations, both companies are really one organization, and a person in the employ of one is in the employ of both, and both are responsible to the employe for the negligence of either.

2. MASTER AND SERVANT—*right of latter to assume performance of duty by former.* A servant has the right to assume that his master has performed his personal obligation of inspection.

3. MASTER AND SERVANT—*respective duties of inspection distinguished.* The master has a duty of inspection as well as of observation; the obligation of the servant is that of observation.

4 INSTRUCTIONS—*when containing abstract proposition will not reverse.* An instruction which contains an abstract proposition of law will not reverse if not misleading.

Action in case for personal injuries. Error to the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the April term, 1911. Affirmed. Opinion filed October 13, 1911.

BARR, MCNAUGHTON & BARR, for plaintiffs in error; STERN, ANDERSON & DAVIS, of counsel.

D. R. ANDERSON, for defendant in error.

MR. JUSTICE WILLIS delivered the opinion of the court.

Perry Asplund began this suit in case in the Circuit Court of Will county against the Conklin Construction Company, hereinafter called the Construction Company, and the Interstate Independent Telephone and

Telegraph Company, hereinafter called the Telephone Company, to recover damages for injuries sustained on December 2, 1904, by falling from a telephone pole while in their employ. He obtained a judgment for $5000 which was reversed and the cause remanded because the jury were erroneously instructed. Asplund v. Conklin Construction Co., 154 Ill. App. 164. On the second trial he obtained a verdict for a like amount. Each company made a motion for a new trial and in arrest of judgment, which were denied, and judgment was entered on the verdict. Both companies excepted to the denial of the motions and prayed an appeal, but it was not perfected and this writ of error was sued out to review the judgment.

The Construction Company was engaged in constructing a new telephone line near Joliet for the Telephone Company. The line was to consist of a series of poles with a ten pin cross-arm at the top and a messenger wire to support the telephone cable. The poles had been set and a "gain" cut near the top of each to receive the cross-arm. The messenger wire had been attached about five feet below the top of each pole. On the morning of the accident, defendant in error was engaged, with other linemen, in placing the top cross-arms. He climbed the pole on the side opposite to the gain, and on reaching a point near the top, stuck the spur of his right foot into the pole, threw his left leg around it and leaned over the top, but did not use his safety belt. He dropped a line to the ground man, who tied a cross-arm to the same, and defendant in error then raised the cross-arm, put it into the gain and drove two lag screws through it into the pole. On receiving a signal from the ground man that one end of the cross-arm was too high, he swung himself to the messenger wire, and standing thereon, threw his left arm over the cross-arm and with a hand axe in the other hand, struck the cross-arm on the extreme end, whereupon it broke at a point between his

arm and the pole. He fell to the ground and both his ankles were crushed, permanently crippling him.

The amended declaration upon which the cause was submitted to the jury alleged that Asplund was in the employ of both companies, and charged, in substance, that the companies negligently failed to furnish him with a reasonably safe cross-arm upon which to rest his weight; and negligently failed to inspect said cross-arm; and averred that while he was in the performance of his duty and in the exercise of reasonable care for his own safety, while so climbing and resting his weight upon said cross-arm, it broke, and he fell to the ground and was injured.

It is not denied that the construction company is liable, if a liability exists, but it is contended that the Telephone Company is in no way connected with the accident, because defendant in error was in the employ of the Construction Company alone; that the Construction Company was an independent contractor and that the Telephone Company had nothing to do with the work until it was completed, and that therefore the record fails to show a joint liability.

The evidence shows that one Parsons was district manager of the telephone company and superintendent of construction and financial man for the construction company at Joliet, and had full charge and control of the work, employed the men, saw to the paying of them and directed their movements; that the two companies had the same general officers, and, at Joliet, they occupied the same office, used the same warehouse, and the same man acted as foreman for both companies. The men who worked for the construction company were often called upon to do repair work for the telephone company and *vice versa,* no separate account of their time being kept. If it rained so they could not work on construction outside, they often worked inside for the telephone company. The wages of all the men at Joliet working for either company

were paid by the same kind of a check. Parsons determined what men should work for the construction company and what men should work on repair work for the telephone company. He also determined what wagons should be used on construction work and what wagons should be used on repair work. He determined what materials should be put into the construction work and what materials should be put into repair work. He determined who should act as boss of the gang, whether it was working on construction work or on repair work. It is clear that he supervised the construction of the telephone line and it is just as natural to suppose that he did it as the manager of the telephone company as that he did it as the superintendent of the construction company. It has been held that where a construction company has the same officers as the company for which it is doing the work under a contract, or where one company is organized as an instrument in the hands of another for construction purposes, or where both companies are corporations occupying the same premises, employing the same servants, and more or less jointly associated, though separate corporations, that both companies are really one organization, and that a person in the employ of one is in the employ of both, and that both are responsible to the employe for the negligence of either. K. & S. R. R. Co. v. Horan, 131 Ill. 288; West Chicago Street R. R. Co. v. Morrison, 160 Ill. 288; Chicago Economic Fuel Gas Co. v. Myers, 168 Ill. 139; Dieters v. St. Paul Gaslight Co., 91 N. W. Rep. 15.

In West Chicago Street Railroad Company v. Morrison, *supra*, suit was brought against the street railroad company, the tunnel company, and Charles T. Yerkes for damages sustained by the Morrison Company for trespass in tearing down the building in which the Morrison Company was located. It was contended that the street railroad company was not a party to the trespass; that if there was any liability

it was against the tunnel company; that the judgment was a unit and if reversible as to one, was reversible as to all. Yerkes was president of the street railroad company and was also a member of the board of directors of the tunnel company, and gave the order to the tunnel company for taking possession of and demolishing the building, which was the trespass complained of. The court sustained the judgment, and in passing upon the case said:

"This evidence, it seems to us, fairly and clearly tends to show that the tunnel company was a mere means or mode adopted by the street railroad company for the construction of its tunnel,—a mere instrument or tool used for that purpose,—and that the tunnel company was organized and acted simply as the agent or servant of the street railroad company."

In Economic Fuel Gas Company v. Myers, *supra,* it was claimed that the gas company was not liable for the injury because the construction work for the gas company was being done by the Chicago Contract Construction Company as an independent contractor. In the opinion of the court it is said:

"We are of the opinion, however, that the doctrine of 'independent contractor' does not apply to the present case. In the first place, the construction company was a mere means or mode, adopted by the gas company for the construction of its system of gas-pipes and gas works. The construction company was a mere instrument or tool used by the gas company for that purpose. The evidence tends fairly and clearly to show, that the construction company was organized and acted simply as the agent or servant of the appellant company. An attempt is here made to evade liability by interposing a construction company as the guilty party. The officers of the gas company were also officers of the construction company. The construction company and the gas company had their offices in the same building, the offices of the gas company being on the first floor and the offices of the

construction company being on the second floor. One Judson was the president of the gas company, and at the same time was consulting and supervising engineer of the construction company. One Yuille was paymaster of the construction company and also an officer of the gas company. One Bryant was supervising the office and fixtures of the construction company in December, 1892, and was also secretary and treasurer of the gas company. One Jelps was in the employ of the gas company and left such employment and worked for the construction company, but at once went back into the service of the gas company. All the officers and employees of the construction company, who testified in this case, were either at the same time connected in some way with the gas company, or passed alternately from the service of one to the service of the other.''

Applying the principles announced in the foregoing cases to the facts in this case, it seems to us that the evidence in this record fairly and clearly tends to show that the construction company was a mere means or mode adopted by the telephone company for the construction of the telephone line, and that the construction company was acting as the agent or servant of the telephone company, and we are unable to say that the jury was not authorized and fully justified in finding that the telephone company was liable for the negligence of the construction company.

It is contended that defendant in error contributed to his injury by his failure to use a safety belt and by not inspecting the cross-arm, and that he assumed the risk. A number of experienced linemen testified that a safety belt is never used in putting on the top cross-arm of new work, and their evidence was not contradicted. The testimony is without variation that a safety belt is only used where the workman is required to remain stationary for a long time or is working among many wires, or is engaged at work which requires the free use of both hands, and is never used where the lineman is moving about. The district man-

ager testified that it was not practical to use a safety belt while placing the cross-arm at the top of the pole, for the reason that the greater portion of the body is above the top of the pole. The evidence strongly tends to establish that defendant in error performed the work of adjusting the cross-arm in the usual, customary and approved manner of experienced linemen. He testified that he had never seen the cross-arm until he raised it to the top of the pole. The gain was about eight inches from the top, and in setting the cross-arm his body was above the top of the pole. When he lowered himself to the messenger wire his head and shoulders were still above the cross-arm, and the knot was unobservable to him. Notwithstanding the proof may show that he, with other employes, had taken these arms from the warehouse, it does not follow that he was bound to inspect them, and in the absence of notice to the contrary he had a right to assume that the master had performed that duty. C. & E. I. R. R. Co. v. Hines, 132 Ill. 161; Illinois Steel Company v. Schymanowski, 162 Ill. 447. A servant must take notice of obvious material conditions and of obvious danger, but he is not obliged to look for these; while the master must ascertain material conditions and danger which can be found by the exercise of reasonable diligence. Illinois Steel Co. v. Mann, 100 Ill. App. 367, 376. The master has a duty of inspection as well as of observation; the obligation of the servant is that of observation. Bailey on Master's Liability, etc., 93-100-107 and 108; Illinois Steel Co. v. Mann, *supra*. Among the personal duties of the master is the duty to use reasonable care to furnish the servant with reasonably safe appliances with which to work. In entering upon the service, he has a right to assume that the master will perform the duties imposed upon him, and the original contract of employment does not include any assumption by the servant of risks or dangers due to failure of the master

to perform such duties. The servant may assume the duty has been performed unless he is chargeable with notice that it has not been. In this case, defendant in error was furnished with a cross-arm admitted to be defective, and he did not assume the risk in the absence of notice of its condition. C. & E. I. R. R. Co. v. Hines, *supra;* Schillinger Bros. Co. v. Smith, 225 Ill. 74. Whether the defendant in error was guilty of negligence which contributed to his injury, and whether he assumed the risk, were questions of fact for the jury, and their finding on these questions in his favor is amply supported by the evidence.

Complaint is made of instructions 1 and 3 given on behalf of defendant in error. No. 1 is as follows:

"The court instructs the jury that it was the duty of the defendant for whom the plaintiff was then working to exercise reasonable care to furnish the plaintiff a reasonably safe cross-arm upon which to perform his work."

The criticism is that it states an abstract principle of law and contains the implication that he had a right to be upon the cross-arm. Instructions should be so drawn as to apply to the case to be decided by the jury, but if the instructions are not misleading, it is not ground for reversal that they are mere statements of the rules of law. Chicago City Railway Company v. Anderson, 193 Ill. 9; Illinois Match Co. v. C. R. I. & P. Ry. Co., 250 Ill. 396. The evidence shows that it was necessary that the weight of defendant in error should in part rest on the cross-arm. We do not think that this instruction misled the jury, and we find no difficulty with the 3rd.

Finding no error in the record warranting a reversal, the judgment is affirmed.

*Affirmed.*