Bernard Gause (Abendroth & Root Manufacturing Company, Defendant in Error), v. Venango Construction Company et al., Plaintiffs in Error.

1. MECHANICS' LIENS, § 57*—*when owner liable to party furnishing materials as an original contractor.* Where persons organized a water company and pursuant to a scheme to build a large water works system, without capital, let the contract to a construction company formed by one of their number, and the construction company was simply used as a receptacle in which to place all the indebtedness incurred in the construction of the plant so that the creditors of such construction company would have no recourse and the profits on the deal would be equally divided between the promoters of the scheme, *held* under the circumstances that the water company was liable to a party that had furnished materials to the construction company as an original contractor instead of a subcontractor.

2. MECHANICS' LIENS, § 128*—*when contractor's lien prior to subsequently recorded trust deed.* An original contractor's lien attaches

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

from the date of the contract and takes priority over a trust deed recorded subsequent to the execution of the contract.

Error to the Circuit Court of Morgan county; the Hon. OWEN P. THOMPSON, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed May 5, 1914. Rehearing denied June 25, 1914.

WORTHINGTON, REEVE & GREEN and KIRBY, WILSON & BALDWIN for plaintiffs in error.

BELLATTI, BARNES & BELLATTI, for defendant in error.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

The original bill in this case was filed by Bernard Gause against the plaintiffs in error and also Abendroth & Root Manufacturing Company and Builders' Iron Foundry Company to enforce a mechanic's lien on the property of the Jacksonville Water Works Company. The claim of Gause was settled and is not involved. The Abendroth & Root Manufacturing Company filed its cross-bill against all the above mentioned parties to enforce a mechanic's lien against said property, and a decree was entered in its favor on said cross-bill. The only errors assigned are such as relate to that part of the decree foreclosing the lien of the defendant in error, the Abendroth & Root Manufacturing Company.

In 1904 Omar N. Gardner, a civil engineer, Charles W. Mackey, an attorney at law, and Orrin D. Bleakley, president of the Franklin Trust Company of Franklin, Pa., originated a scheme for constructing a water works for the city of Jacksonville, Illinois. Gardner and Mackey procured a franchise from the city of Jacksonville granting them the privilege of supplying the city with water. The ordinance granting the franchise was passed in September of that year and authorized them to assign it to a corpora-

tion to be organized by them and required that the
water should be brought from the river bottom about
eighteen miles away. They caused to be organized
the Jacksonville Water Works Company, to which they
assigned said franchise, with a capital stock of $350,-
000. Of this capital stock Mackey subscribed for 3,494
shares, the par value of each share being $100.
Mackey was elected president and was also a mem-
ber of the executive committee, Gardner became a
director, and Bleakley became a director, treasurer
and member of the executive committee. The direct-
ors passed a resolution authorizing Mackey, the presi-
dent, to enter into a contract with Gardner to con-
struct the water works. Thereupon Gardner resigned
as director, but instead of entering into a contract
with Gardner for the construction of the works, the
Venango Construction Company was organized under
the laws of Pennsylvania with a capital stock of $50,-
000, of which Gardner was made president, and he
subscribed for substantially all of the stock of that
Company, and the contract for the construction of the
works was let by the Water Company to this Con-
struction Company. No part of the capital stock of
either the Water Company or the Construction Com-
pany was ever paid. After the meeting of the stock-
holders of the Water Company at which they elected
the directors, which was in January, 1905, there never
was another meeting of the stockholders for over two
years. After the first preliminary meeting of the di-
rectors of said Company there never was another
meeting of the directors for a like period of time.
The stockholders of the Construction Company met
and elected directors and never met again. The di-
rectors met and elected Gardner president and never
met again. All the future transactions involved in
this litigation so far as the Water Company, the Con-
struction Company and the Trust Company are con-
cerned were carried on by the three individuals, Gard-

ner, Mackey and Bleakley. The contract between the Construction Company and the Water Company provided that the Construction Company should obtain the land and right of way, furnish all materials and construct the wells, pumping station and pipe line, and that when the plant should be completed it should turn the same over to the Water Company complete and ready for use, and the Water Company agreed in consideration thereof to turn over to the Construction Company bonds to the amount of $350,000, which it had authorized to be issued, and all its capital stock with the exception of ten shares. Thereafter the Trust Company, by O. D. Bleakley, its president, entered into an agreement with the Construction Company by which the Trust Company agreed to loan the Construction Company $280,000, and received as security the Water Company's bonds to the amount of $350,000, and to secure the payment of the bonds a trust deed was executed by the Water Company to the Trust Company as trustee and conveyed to the latter all property it then had, and all that it might afterwards acquire. At this time the Water Company owned no real estate. This trust deed was executed immediately upon the organization of the Water Company and was dated January 4, 1905, but was not recorded until January 28, 1905. On this same day, January 4, 1905, an agreement was entered into between the Construction Company, the Trust Company and certain underwriters, among whom were Mackey and Bleakley, which agreement referred to the organization of the Water Company and the Construction Company and recited that the Construction Company had entered into such contract with the Water Company and that the Water Company had issued its bonds for $350,000, and its stock to the amount of $350,000, and had delivered the bonds and stock to the Construction Company in full consideration of the work to be done under the contract between the two

companies, and the underwriters agreed to underwrite the bonds. The bonds were underwritten at the rate of $800 per bond, the par value of each bond being $1,000. Shortly thereafter Mackey, Bleakley and Gardner personally entered into a written agreement to divide all the profits on the whole deal equally between them. Bleakley was then substituted as trustee in the trust deed in place of the Franklin Trust Company. In January, 1905, prior to the recording of the trust deed in question, the Construction Company entered into a contract with the defendant in error, the Abendroth & Root Manufacturing Company, whereby the latter was to furnish steel pipe and forcing mains to be used in the construction of the plant and through which the water should be carried from the wells to the city, about eighteen miles away, for the agreed price of $1.50 per lineal foot. Other contracts were made with other persons and companies for other material and construction work and all the contracts were prepared by Mackey. The Manufacturing Company furnished the pipe and there was a balance due it of $22,445.36. The Construction Company proceeded to construct the plant and obtain the right of way and ten acres of land on which the pumping station was erected, but instead of taking the title to the land in its own name, as its contract with the Water Company contemplated, had the deed executed conveying it directly to the Water Company. Before the Manufacturing Company entered into the contract to furnish the pipe to the Construction Company, the latter had furnished it with a copy of this contract with the Water Company, which provided that the Construction Company should obtain the necessary land and right of way and on the completion of the work should convey it to the Water Company. The Construction Company defaulted in its payments under its various contracts for the material and construction of the works, and it having no assets of any kind whatever and the deeds to all the property on which the improvements had

been made having been taken in the name of the Water Works Company, the various creditors, among which is the Manufacturing Company, filed bills or cross-bills to foreclose mechanics' liens upon the property of the Water Company, on the theory that the Water Company and the Construction Company were substantially one and the same thing and that the Construction Company was simply used as a scheme by which the creditors who furnished the labor and material for the construction of the water works might be defrauded out of the just payment of their claims. The chancellor who heard the case found that the Construction Company and the Water Company had equal interests in the property, and decreed a foreclosure of the liens.

It is the contention of plaintiffs in error that the Manufacturing Company was a subcontractor of the Water Company, and that as it had served no notice on the Water Company as required by the statute it cannot enforce a lien, and also that the trust deed is a prior lien and takes precedence over that of the Manufacturing Company. The evidence clearly shows that Mackey, Gardner and Bleakley attempted to promote a scheme to build a large and expensive water works system without capital and that the Construction Company was used simply as a receptacle in which to place all the indebtedness incurred by the construction, and that by taking the deeds to the property directly in the name of the Water Company the latter Company would be freed from all obligations except its bond issue, and the creditors would be left without recourse, and that the profits on the deal would be divided equally between them. Under such circumstances the Water Company is liable to the Manufacturing Company as an original contractor, and the contention that the latter is a subcontractor cannot be sustained.

The lien of the Manufacturing Company attached from the date of its contract with the Construction

Company. This contract was executed before the trust deed was recorded and it therefore takes precedence over the trust deed.

The other contentions of plaintiffs in error we consider to be without merit, and the decree will be affirmed.

*Affirmed.*